United States District Court
Southern District of Texas

**ENTERED**

July 22, 2022

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| THURSTON RICKEY-LEE DAVIS,<br>TDCJ #2217674,<br><br>        Petitioner,<br><br>v.<br><br>BOBBY LUMPKIN, Director,<br>Texas Department of Criminal<br>Justice - Correctional<br>Institutions Division,<br><br>        Respondent. | CIVIL ACTION NO. H-21-3849 |

## MEMORANDUM OPINION AND ORDER

Thurston Rickey-Lee Davis filed a Petition for a Writ of Habeas Corpus By a Person in State Custody ("Petition") (Docket Entry No. 1), challenging an aggravated robbery conviction that was entered against him in Harris County, Texas. Subsequently, Davis filed a second Petition for a Writ of Habeas Corpus By a Person in State Custody ("Amended Petition") (Docket Entry No. 9) challenging the same conviction and raising the same claims for relief. Now pending is Respondent [Bobby Lumpkin]'s Motion for Summary Judgment with Brief in Support ("Respondent's MSJ") (Docket Entry No. 13), arguing that this action is barred by the governing statute of limitations and that Davis is not otherwise entitled to relief. Davis has submitted a Reply to Respondent's Summary Judgment/Brief in Support ("Petitioner's Reply") (Docket Entry No. 17). After

considering all of the pleadings, the state court record, and the applicable law, the court will grant Respondent's MSJ and dismiss this action for the reasons explained below.

## I.  Background

A grand jury returned an indictment against Davis in Harris County Cause No. 1571123, accusing him of aggravated robbery with a deadly weapon.[1]  The indictment alleged that while Davis was committing theft of property owned by Miguel Perez-Trujillo ("Perez") he intentionally and knowingly threatened and placed Perez "in fear of imminent bodily injury and death" by using and exhibiting a firearm during the offense.[2]

At a jury trial in the 230th District Court for Harris County, Texas, Perez testified that he was robbed at gunpoint shortly after he arrived home from work at approximately 12:30 a.m. on November 17, 2017.[3]  Perez explained that he parked his 2014 Malibu on the street and left it running while he exited the vehicle to open the gate to his driveway.[4]  After Perez opened the gate he turned around and saw a red car parked behind his vehicle and a

_____

[1]See Indictment, Docket Entry No. 14-1, p. 9.  For purposes of identification all page numbers refer to the pagination imprinted by the court's Electronic Case Filing ("ECF") system.

[2]Id.

[3]Court Reporter's Record-Vol. 3, Guilt/Innocence Phase Jury Trial, Docket Entry No. 14-5, pp. 21-23.

[4]Id. at 21.

black man running towards it.[5]  The man entered Perez's vehicle, locked the door, and drove away as Perez tried in vain to open the door.[6]  Perez then saw that there was a second man in the red car who was pointing a gun at him and speaking to him in English, which Perez did not understand.[7]  When Perez saw the gun he dove into a nearby ditch in fear because he believed the man intended to hurt him.[8]  Perez got a good look at both of the perpetrators.[9]  After the red car drove away in the same direction as his stolen vehicle Perez went to his neighbor's house to summon the police.[10]

Officer Kyle Stringer and Officer Michael Duron, who were dispatched to the reported auto theft that night, testified that they used an iPhone application to track the location of Perez's cellphone, which had been left inside his stolen vehicle.[11]  The record shows that the suspects dumped Perez's vehicle a short distance from his home and fled in the red car.[12]  Shortly

---

[5]Id. at 22.

[6]Id. at 22, 27.

[7]Id. at 23, 27.

[8]Id. at 27-28.

[9]Id. at 27-29.

[10]Id. at 29.

[11]Id. at 30-31; Reporter's Record-Vol. 4, Guilt/Innocence Phase Jury Trial, Docket Entry No. 14-6, pp. 38-41, 57-58, 116-19.

[12]Reporter's Record-Vol. 3, Guilt/Innocence Phase Jury Trial, Docket Entry No. 14-5, p. 37; Reporter's Record—Vol. 4, Guilt/ Innocence Phase Jury Trial, Docket Entry No. 14-6, p. 57.

thereafter Officer Genaro Vallejo stopped the red car based on the
tracking information from Perez's cellphone and a description of
the vehicle that had been broadcast over the radio.[13]   Officer
Stringer and Officer Duron brought Perez to the scene of the
traffic stop, where Perez identified Davis as the man in the red
car who pointed a gun at him while the other man, who was
identified as DeKevin Green, stole his car.[14]

Officer Vallejo searched the red vehicle for weapons and
recovered a Beretta firearm from underneath the seat that Davis had
occupied.[15]   Officer Vallejo identified the firearm from a photo-
graph that was captured on the night of the offense by his body
camera and admitted into evidence as State's Exhibit 20.[16]
Detective Steven Hooper testified that he obtained the weapon in
the photograph from officers at the scene and logged it into the
property room along with other items of evidence.[17]   Perez's
cellphone was also recovered from the red car.[18]

---

[13]Reporter's Record-Vol. 4, Guilt/Innocence Phase Jury Trial,
Docket Entry No. 14-6, pp. 57-58, 95-99, 113.

[14]Reporter's Record-Vol. 3, Guilt/Innocence Phase Jury Trial,
Docket Entry No. 14-5, p. 36; Reporter's Record-Vol. 4, Guilt/
Innocence Phase Jury Trial, Docket Entry No. 14-6, pp. 31-32,
65-70, 126-31.

[15]Reporter's Record-Vol. 4, Guilt/Innocence Phase Jury Trial,
Docket Entry No. 14-6, pp. 105-07.

[16]Id. at 101-02, 106-07.

[17]Id. at 88, 90-92.

[18]Id. at 33, 112-13.

After both sides rested their case Davis's defense counsel asked for a jury instruction on the lesser-included offense of theft from a person on the grounds that there was insufficient proof that a firearm was used during the offense.[19]  The trial court observed that the requested instruction was not supported by the evidence, pointing to Perez's testimony that he was placed in fear by the suspect (Davis) who pointed a gun at him during the robbery when Green got in the vehicle and drove away.[20]  The trial court concluded, therefore, that Davis was not entitled to an instruction on the lesser-included offense of theft.[21]

During their deliberations the jury sent out a note, which said:  "Can we suggest a charge of 'lesser inclusion'?"[22]  The trial court returned the note to the jurors, responding in writing as follows:  "No.  That is not for your consideration."[23]  Thereafter, the jury found Davis guilty of aggravated robbery with a deadly weapon as charged in the indictment.[24]  After considering a Stipulation of Evidence showing that Davis had several prior

---

[19]Id. at 140-41.

[20]Id. at 142.

[21]Id. at 142-43.

[22]Note, Docket Entry No. 14-1, p. 59.

[23]Id.

[24]Verdict, Docket Entry No. 14-1, p. 53; Reporter's Record-Vol. 4, Guilt/Innocence Phase Jury Trial, Docket Entry No. 14-6, pp. 175-76.

convictions,[25] the trial court sentenced him to 25 years' imprisonment in the Texas Department of Criminal Justice ("TDCJ").[26]

On direct appeal Davis's appointed counsel filed a brief under Anders v. California, 87 S. Ct. 1396 (1967) (an "Anders brief"), stating that the appeal was "frivolous" because there were no arguable grounds for appeal.[27] Davis filed a pro se response to the Anders Brief, arguing that the evidence was insufficient to prove all elements of the charged offense of aggravated robbery because the State did not present evidence showing that he possessed a deadly weapon during the offense.[28] The intermediate court of appeals affirmed the conviction in an unpublished opinion after an independent review of the record failed to disclose any reversible error. See Davis v. State, No. 01-18-00858-CR, 2019 WL 6905226, at *1 (Tex. App. — Houston [1st Dist.] Dec. 19, 2019) (per curiam).[29] Davis did not appeal further by filing a petition for discretionary review with the Texas Court of Criminal Appeals.[30]

---

[25]Reporter's Record–Vol. 6, Stipulation of Evidence, State's Exhibit 40, Docket Entry No. 14-8, pp. 76-77.

[26]Reporter's Record—Vol. 5, Punishment Phase to the Court, Docket Entry No. 14-7, pp. 9-10, 18-19; Judgment of Conviction by Jury, Docket Entry No. 14-1, p. 65.

[27]Anders Brief in Support of Motion to Withdraw, Docket Entry No. 14-11, p. 16.

[28]Response to Anders Brief, Docket Entry No. 14-12, pp. 8-10.

[29]Memorandum Opinion, Docket Entry No. 14-13, p. 3.

[30]Statement from Deana Williamson, Clerk of the Court of Criminal Appeals, Docket Entry No. 14-17.

On April 23, 2020, Davis executed an Application for a Writ of Habeas Corpus Seeking Relief From Final Felony Conviction Under [Texas] Code of Criminal Procedure, Article 11.07 ("State Habeas Application"), alleging that he was entitled to relief from his aggravated robbery conviction because he was denied effective assistance of counsel from his trial and appellate attorneys and because the prosecutor engaged in misconduct.[31]   The trial court adopted the State's Proposed Findings of Fact, Conclusions of Law, and Order ("Findings and Conclusions") and recommended that relief be denied.[32]   On January 13, 2021, the Texas Court of Criminal Appeals denied relief without a written order based on the trial court's findings and its own independent review of the record.[33]

On November 22, 2021, the court received Davis's initial Petition for federal habeas corpus relief from his aggravated robbery conviction under 28 U.S.C. § 2254.[34]   Although Davis

_____

[31]State Habeas Application, Docket Entry No. 14-20, pp. 5-22. "[U]nder Texas law the pleadings of pro se inmates, including petitions for state post-conviction relief, are deemed filed at the time they are delivered to prison authorities, not at the time they are stamped by the clerk of the court." Richards v. Thaler, 710 F.3d 573, 578-79 (5th Cir. 2013). Davis does not indicate the date on which he submitted his State Habeas Application to prison officials for delivery to the Harris County District Clerk's Office, where it was stamped as received on April 28, 2020. See State Habeas Application, Docket Entry No. 14-20, p. 5. Using the date most favorable to Davis, the court considers that his State Habeas Application was filed on the date he signed it. See id. at 22.

[32]Findings and Conclusions, Docket Entry No. 14-20, pp. 139-47.

[33]Action Taken on Writ No. 91,548-01, Docket Entry No. 14-18.

[34]Petition, Docket Entry No. 1, p. 1.

indicated that he executed this Petition on February 21, 2021, he certified that it was placed in the prison mailing system for delivery to the court on November 19, 2021.[35]  On January 13, 2022, the court received Davis's Amended Petition, which included a letter from Davis.[36]   Davis explained that he made a "filing mistake" by stating that he executed his initial Petition on February 21, 2021.[37]  Davis indicates in his Amended Petition that he signed it on November 20, 2021.[38]  Using the date most favorable to Davis under the prison mailbox rule,[39] the court will treat his initial Petition as though it was filed on the date that he claims to have placed it in the prison mailing system on November 19, 2021.[40]

Davis raises the following claims for relief, which have been ordered as follows for purposes of analysis:

> (1)  He was denied effective assistance of counsel at trial because his defense attorney:

---

[35]Id. at 16.

[36]Amended Petition, Docket Entry No. 9, p. 17 (letter from Davis dated December 29, 2021, and file-stamped as received on January 13, 2022).

[37]Id.

[38]Id. at 16.

[39]See Rule 3(d) of the Rules Governing Section 2254 Cases in the U.S. District Courts; see also Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998) (holding that under the prison mailbox rule a pro se prisoner's federal habeas petition is considered filed "when he delivers the papers to prison authorities for mailing").

[40]Petition, Docket Entry No. 1, p. 16.

      (a)   failed to object to a photograph depicting a firearm that was not in evidence, which was admitted as State's Exhibit 20;

      (b)   failed to "pursue the rejected jury instruction" on a lesser-included offense after the jury sent out a note inquiring about one during deliberations;

      (c)   made a comment that showed he had a conflict of interest.

(2)   He was denied effective assistance of counsel when his appellate attorney failed to raise issues about the following:

      (a)   insufficiency of the evidence regarding his possession of a deadly weapon and the firearm that was not in evidence;

      (b)   the trial court's decision to deny the jury's request for a lesser-included offense instruction.

(3)   The prosecutor engaged in misconduct by entering State's Exhibit 20 into evidence for the purpose of denying him a jury instruction on a lesser-included offense.[41]

The respondent moves for summary judgment on the grounds that the claims are barred by the applicable one-year statute of

---

[41]Both the Petition and the Amended Petition filed by Davis assert the same grounds for relief although the pages are in different order.  See Petition, Docket Entry No. 1, pp. 6-12; Amended Petition, Docket Entry No. 9, pp. 6-12.  When discussing Davis's claims the court will refer to the Amended Petition, which supersedes the original Petition.  See King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994) ("An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading.").  All of the petitioner's pleadings have been liberally construed as required under a less stringent standard than those drafted by lawyers.  See Haines v. Kerner, 92 S. Ct. 594, 596 (1972) (per curiam).

limitations.[42]   Alternatively,  the  respondent  argues  that  Davis
fails  to  show  that  he  is  entitled  to  relief  on  his  claims,  which
were  rejected  on  state  habeas  corpus  review.[43]

## II.  **The One-Year Statute of Limitations**

This  proceeding  is  governed  by  the  Antiterrorism  and  Effective
Death  Penalty  Act  (the  "AEDPA"),  Pub.  L.  No.  104-132,  110  Stat.
1214  (1996),  which  provides  that  all  federal  habeas  corpus
petitions  filed  after  April  24,  1996,  are  subject  to  a  one-year
limitations  period  found  in  28  U.S.C.  §  2244(d),  which  runs  from
the  latest  of  —

>  (A)  the  date  on  which  the  judgment  became  final  by  the
>      conclusion  of  direct  review  or  the  expiration  of
>      the  time  for  seeking  such  review;
>
>  (B)  the  date  on  which  the  impediment  to  filing  an
>      application  created  by  State  action  in  violation  of
>      the  Constitution  or  laws  of  the  United  States  is
>      removed,  if  the  applicant  was  prevented  from  filing
>      by  such  State  action;
>
>  (C)  the  date  on  which  the  constitutional  right  asserted
>      was  initially  recognized  by  the  Supreme  Court,  if
>      the  right  has  been  newly  recognized  by  the  Supreme
>      Court  and  made  retroactively  applicable  to  cases  on
>      collateral  review;  or
>
>  (D)  the  date  on  which  the  factual  predicate  of  the
>      claim  or  claims  presented  could  have  been
>      discovered  through  the  exercise  of  due  diligence.

28  U.S.C.  §  2244(d)(1).  The  limitations  period  may  be  extended  or
tolled  for  "[t]he  time  during  which  a  properly  filed  application

---

[42]Respondent's MSJ, Docket Entry No. 13, pp. 8-12.

[43]Id. at 12-37.

for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending" in state court, which "shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

The procedural history of this case reflects that Davis's aggravated robbery conviction was affirmed by the intermediate court of appeals on December 19, 2019.[44] Because Davis did not appeal further by filing a petition for discretionary review with the Texas Court of Criminal Appeals, his conviction became final thirty days later on January 20, 2020, when his time to do so expired.[45] See Tex. R. App. P. 68.2(a); see also Gonzalez v. Thaler, 132 S. Ct. 641, 653-54 (2012) (clarifying that, for petitioners who do not seek certiorari review with the Supreme Court, a judgment becomes "final" for purposes of the AEDPA when the time for seeking direct review, either in the Supreme Court or in state court, expires). That date triggered the statute of limitations found in § 2244(d)(1)(A), which expired one year later on January 20, 2021. Davis's federal Petition, which was reportedly placed into the prison mailing system on November 19, 2021, is late by 304 days.

---

[44]Memorandum Opinion, Docket Entry No. 14-13, p. 1.

[45]Because the 30-day period for Davis to file a petition for discretionary review fell on Saturday January 18, 2020, the respondent notes that his time to seek such review did not expire until Monday January 20, 2020. See Respondent's MSJ, Docket Entry No. 13, p. 10 & n.8 (citing Tex. R. App. P. 4.1).

As noted above, a habeas petitioner may be entitled to statutory tolling under 28 U.S.C. § 2244(d)(2), which provides that the time during which a "properly filed" application for state habeas corpus or other collateral review is pending shall not be counted toward the limitations period.  Davis executed a State Habeas Application on April 23, 2020,[46] which the Texas Court of Criminal Appeals denied on January 13, 2021.[47]  This state habeas corpus proceeding, which was pending for 266 days, extended Davis's time to file a federal Petition from January 20, 2021, to October 13, 2021.[48]  Because Davis's initial federal Petition was not filed until more than a month later on November 19, 2021, his Petition is time-barred unless another statutory or equitable exception applies.

Davis acknowledges that the AEDPA's one-year statute of limitations expired before he filed his Petition.[49]  Davis argues that his untimeliness should be excused because he was prevented from seeking relief by prison personnel at the Allred Unit.[50]  Specifically, Davis contends that the law library was inadequate because his requests for a copy of the AEDPA were refused.[51]

_____

[46]State Habeas Application, Docket Entry No. 14-20, p. 22.

[47]Action Taken on Writ No. 91,548-01, Docket Entry No. 14-18.

[48]Respondent's MSJ, Docket Entry No. 13, p. 11.

[49]Petitioner's Reply, Docket Entry No. 17, p. 3.

[50]Id.

[51]Attachment A to Petitioner's Reply, Davis['s] Sworn Affidavit, Docket Entry No. 17, p. 11.

Without providing any details about when these requests were made or who refused them, Davis contends that he did not receive a copy of the AEDPA until November 3, 2021, when he was provided one by another inmate.[52]   Davis argues, therefore, that the statute of limitations should be tolled under 28 U.S.C. § 2244(d)(1)(B) until this state-created impediment was removed on November 3, 2021.[53]

Davis's argument relies on Egerton v. Cockrell, 334 F.3d 433 (5th Cir. 2003), in which the Fifth Circuit held that "an inadequate prison law library may constitute a state created impediment that would toll the AEDPA's one-year limitations period pursuant to § 2244(d)(1)(B)." Id. at 439.   The decision in Egerton is distinguishable from the facts in this case.   The petitioner in Egerton was convicted before the AEDPA was enacted in 1996, and there was no evidence that he had actual knowledge of the AEDPA or its newly established statute of limitations before it expired. Id. at 438.   The Fifth Circuit observed that the issue was whether the petitioner was aware of the AEDPA, noting that a prison law library which lacks a copy does not automatically qualify as an impediment under § 2244(d)(1)(B) where the inmate "knew of the AEDPA's existence" as evidenced by his affirmative requests for a copy of it.   Id. at 437-38.   Davis, who reportedly made several requests for a copy of the AEDPA, does not allege facts showing

_____

[52]Id.

[53]Petitioner's Reply, Docket Entry No. 17, pp. 3-4.

-13-

that he was unaware of the AEDPA or its limitations period.[54]   The holding in Egerton does not apply where, as here, a petitioner "does not . . . allege that he had no knowledge of AEDPA's statute of limitations."   Krause v. Thaler, 637 F.3d 558, 561 (5th Cir. 2011).

The statute of limitations established by the AEDPA has been in effect for more than 25 years.   The record confirms that the AEDPA statute of limitations was set forth in the pre-printed form Petition that Davis filed with the court, providing him with notice and an opportunity to explain why this action is not time-barred.[55] Based on this record, Davis's conclusory allegation that he was prevented from filing a timely federal habeas petition because the prison law library refused his requests for a copy of the AEDPA is insufficient to toll the limitations period.   See Krause, 637 F.3d at 561; see also Romero v. Thaler, No. 2:10-CV-075, 2010 WL 2366025, at *3 (N.D. Tex. May 25, 2010) ("Now that the AEDPA has been in effect for over a decade, it is unlikely that a prisoner could successfully rely upon Egerton, which was fact-specific to a prisoner dealing with a new law and no copy of the statute."), report and recommendation adopted, 2010 WL 2366033 (N.D. Tex. June 11, 2010).

---

[54]Davis Sworn Affidavit, Docket Entry No. 17, p. 11.

[55]Petition, Docket Entry No. 1, p. 15; Amended Petition, Docket Entry No. 9, p. 15.

Davis also appears to argue that the statute of limitations should be tolled for equitable reasons due to the inadequate law library at the Allred Unit.[56]   The statute of limitations may be tolled for equitable reasons, but the Supreme Court has emphasized that a habeas petitioner is entitled to equitable tolling "only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."   Holland v. Florida, 130 S. Ct. 2549, 2562 (2010) (quoting Pace v. DiGuglielmo, 125 S. Ct. 1807, 1814 (2005)).   The chronology in this case reflects extensive delay, and Davis offers no details establishing that he attempted to pursue federal review with the requisite diligence.   The Fifth Circuit has repeatedly held that "[e]quity is not intended for those who sleep on their rights."   Manning v. Epps, 688 F.3d 177, 183 (5th Cir. 2012) (internal quotation marks and citations omitted).   Because Davis does not show that any basis for statutory or equitable tolling exists, he fails to demonstrate that his Petition was timely filed.   Therefore, the respondent is entitled to summary judgment on this issue.   Alternatively, the claims are without merit for the reasons discussed below.

### III.   <u>Analysis of Claims on the Merits</u>

### A.   Standard of Review

When the Texas Court of Criminal Appeals has denied a state habeas application without a written order, as it has in this case,

---

[56]Petitioner's Reply, Docket Entry No. 17, p. 4.

that decision qualifies as an adjudication on the merits, which is subject to deference under the federal habeas corpus standard of review established by the AEDPA, 28 U.S.C. § 2254(d).  See Anaya v. Lumpkin, 976 F.3d 545, 550 (5th Cir. 2020); see also Miller v. Johnson, 200 F.3d 274, 281 (5th Cir. 2000) ("Under Texas law a denial of relief by the Court of Criminal Appeals serves as a denial of relief on the merits of the claim.").[57]  Under the AEDPA standard a federal habeas corpus court may not grant relief unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]"  28 U.S.C. § 2254(d)(1).  Likewise, if a claim presents a question of fact, a petitioner cannot obtain federal habeas relief unless he shows that the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).

"A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially

---

[57]The Texas Court of Criminal Appeals has clarified that "a 'denial' signifies that we addressed and rejected the merits of a particular claim while a 'dismissal' means that we declined to consider the claim for reasons unrelated to the claim's merits." Ex parte Torres, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

indistinguishable facts." <u>Matamoros v. Stephens</u>, 783 F.3d 212, 215 (5th Cir. 2015) (internal quotation marks and citations omitted). To constitute an "unreasonable application of" clearly established federal law, a state court's holding "must be objectively unreasonable, not merely wrong; even clear error will not suffice." <u>Woods v. Donald</u>, 135 S. Ct. 1372, 1376 (2015) (quoting <u>White v. Woodall</u>, 134 S. Ct. 1697, 1702 (2014)). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" <u>Id.</u> (quoting <u>Harrington v. Richter</u>, 131 S. Ct. 770, 786-87 (2011)).

A state court's factual determinations are also entitled to "substantial deference" on federal habeas corpus review. <u>Brumfield v. Cain</u>, 135 S. Ct. 2269, 2277 (2015); <u>Wood v. Allen</u>, 130 S. Ct. 841, 849 (2010) (noting that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance"). A state court's findings of fact are "presumed to be correct" unless the petitioner rebuts those findings with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The presumption of correctness extends not only to express factual findings, but also to implicit or "'unarticulated findings which are necessary to the state court's conclusions of mixed law and fact.'" <u>Murphy v. Davis</u>, 901

F.3d 578, 597 (5th Cir. 2018) (quoting Valdez v. Cockrell, 274 F.3d 941, 948 n.11 (5th Cir. 2001)).

## B.   Ineffective Assistance of Trial Counsel

Davis contends that he is entitled to relief from his aggravated robbery conviction because he was denied effective assistance of counsel at his trial.[58]   Claims for ineffective assistance of counsel are governed by the standard announced in Strickland v. Washington, 104 S. Ct. 2052 (1984).   To prevail under the Strickland standard a criminal defendant must demonstrate (1) that his counsel's performance was deficient and (2) that the deficient performance resulted in prejudice.   Id. at 2064.   "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable."   Id.

To satisfy the deficient-performance prong, "the defendant must show that counsel's representation fell below an objective standard of reasonableness."   Strickland, 104 S. Ct. at 2064.   This is a "highly deferential" inquiry that requires "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."   Id. at 2065.   "It is only when the lawyer's errors were so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment that Strickland's first prong is satisfied."   Buck v.

---

[58]See Amended Petition, Docket Entry No. 9, pp. 6-7, 11-12.

Davis, 137 S. Ct. 759, 775 (2017) (internal quotation marks and citation omitted).

To satisfy the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 104 S. Ct. at 2068. A defendant must "affirmatively prove prejudice." Id. at 2067. A habeas petitioner cannot satisfy the second prong of Strickland with mere speculation and conjecture. See Bradford v. Whitley, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations are insufficient to demonstrate either deficient performance or actual prejudice. See Day v. Quarterman, 566 F.3d 527, 540-41 (5th Cir. 2009).

Where an ineffective-assistance claim was rejected by the state court, the Supreme Court has clarified that the issue on federal habeas review is not whether "'the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable — a substantially higher threshold.'" Knowles v. Mirzayance, 129 S. Ct. 1411, 1420 (2009) (citation omitted). When applied in tandem with the highly deferential standard found in 28 U.S.C. § 2254(d), review of ineffective-assistance claims is "doubly deferential" on habeas corpus review. Id. at 1413; see also Richter, 131 S. Ct. at 788 (emphasizing that the standards created by Strickland and § 2254(d) are both "highly deferential," and "'doubly' so" when applied in tandem) (citations and quotations omitted); Beatty v. Stephens, 759

F.3d 455, 463 (5th Cir. 2014) (same).  Davis does not show that his counsel's performance was ineffective under the doubly deferential standard for reasons discussed below.

> 1.   Failure to Object to State's Exhibit 20

Davis contends that his trial counsel was deficient for failing to object to the photograph admitted into evidence as State's Exhibit 20, which depicted a firearm that was not in evidence.[59]  The respondent argues that this claim is without merit for reasons articulated by the state habeas corpus court, which found that the photograph was admissible under Texas law and that counsel had no basis to object.[60]

To admit photographic evidence under Texas law a witness who saw the object or scene depicted in the photograph with his naked eye must identify and confirm that the photograph truly and accurately represents what is depicted.  See Huffman v. State, 746 S.W.2d 212, 222 (Tex. Crim. App. 1988) (citation omitted).  The state habeas court found that Officer Vallejo testified to "the foundational elements for admitting the photo in State's Exhibit 20 and specifically testified that he found the gun depicted in the

---

[59]Amended Petition, Docket Entry No. 9, p. 6.  Davis correctly notes that the actual firearm was not admitted into evidence.  See Petitioner's Reply, Docket Entry No. 17, p. 6.  The record reflects that the trial court sustained objections by Davis's trial counsel because the State failed to establish a proper chain of custody for the weapon.  See Reporter's Record-Vol. 4, Guilt/Innocence Phase Jury Trial, Docket Entry No. 14-6, pp. 107-111.

[60]Respondent's MSJ, Docket Entry No. 13, p. 27.

photo under [Davis's] seat" after stopping Davis and his co-defendant, DeKevin Green, twenty minutes after the aggravated robbery occurred.[61] Based on this record, the state habeas court found that Davis failed to show that his defense counsel erred by not objecting to the exhibit or that the trial court would have committed error in overruling any such objection.[62]

The state habeas corpus court's findings are supported by the record, which confirms that Officer Vallejo identified the photograph marked as State's Exhibit 20 as a fair and accurate depiction of the scene recorded by his body camera on the night of the aggravated robbery.[63] Officer Vallejo testified further that the photograph accurately depicted the weapon that he located during his search of the vehicle, where it was discovered underneath the seat in which Davis had been sitting.[64]

Davis does not show that his counsel had, but failed to make, a valid objection to the photograph or that the trial court would have sustained the objection and excluded the exhibit. Conclusory allegations of ineffective assistance "do not raise a constitutional issue in a federal habeas proceeding." Collier v.

---

[61]Findings and Conclusions, Docket Entry No. 14-20, p. 140 ¶ 10.

[62]Id. at ¶¶ 11, 12.

[63]Reporter's Record-Vol. 4, Guilt/Innocence Phase Jury Trial, Docket Entry No. 14-6, pp. 99-100.

[64]Id. at 106-07.

<u>Cockrell,</u> 300 F.3d 577, 587 (5th Cir. 2002) (citations omitted). Because Davis has not shown that counsel was deficient, he further fails to show that the state court's decision to deny relief on this claim was unreasonable under <u>Strickland.</u>   Therefore, Davis is not entitled to relief on this issue.

      2.  <u>Failure to Pursue a Lesser-Included Offense Instruction</u>

      Davis contends that his trial counsel was deficient for failing to pursue a lesser-included offense instruction after the jury suggested one in the note that was sent out during deliberations.[65]   Davis argues that if his counsel had argued in favor of giving the lesser-included offense instruction that had been rejected previously by the trial court, then the jury would have acquitted him of aggravated robbery.[66]

      The state habeas court observed that Davis's defense counsel requested a lesser-included offense instruction at the close of the guilt/innocence phase of the trial.[67]   The state habeas corpus court found that Davis did not show that there was any controverting evidence to support giving a lesser-included offense instruction to the aggravated robbery charge or that the trial court erred by denying the requested instruction.[68]   Thus, the state habeas corpus

_____

[65]Amended Petition, Docket Entry No. 9, p. 12.

[66]<u>Id.</u>

[67]Findings and Conclusions, Docket Entry No. 14-20, p. 140 ¶ 15.

[68]<u>Id.</u> at 141 ¶¶ 17-18.

court concluded that Davis failed to show that he was entitled to a lesser-included offense instruction.[69]

To be eligible for a lesser-included offense instruction, the defense needs to show (1) that the lesser offense is included within the proof necessary to establish the offense charged; and (2) that there is some evidence in the record that would permit the jury to find the defendant guilty only of the lesser offense. See Campbell v. State, 149 S.W.3d 149, 152 (Tex. Crim. App. 2004); see also Rousseau v. State, 855 S.W.2d 666, 673 (Tex. Crim. App. 1993). The record reflects that the trial court rejected defense counsel's request for a lesser-included offense instruction on theft from a person because the victim testified that Davis pointed a gun at him during the robbery and placed him in fear of imminent harm.[70]  The trial court implicitly found that this evidence would preclude a finding that Davis was guilty only of theft.[71]  Because Davis did not present any contradictory evidence showing that he did not use a firearm during the robbery or that he was guilty only of theft,

---

[69]Id. at 142 ¶¶ 26-27.

[70]Court Reporter's Record-Guilt/Innocence Phase Jury Trial, Vol. 4, Docket Entry No. 14-6, pp. 141-43.

[71]Id. at 143.  Compare Tex. Penal Code § 31.03(a) (defining theft as the unlawful appropriation of property with intent to deprive the owner of property), with Tex. Penal Code § 29.02(a)(2) (defining robbery as committing a theft in which the defendant intentionally or knowingly threatens or places another in fear of imminent bodily injury) and Tex. Penal Code § 29.03(a)(2) (defining aggravated robbery as robbery in which the assailant uses or exhibits a deadly weapon).

-23-

he fails to show that a lesser-included offense instruction for theft was supported by the evidence or that the trial court erred by denying his counsel's request.

More importantly, Davis fails to show that his counsel was deficient for failing to repeat his request for a lesser-included offense instruction after the jury sent out its note during deliberation. See Boyd v. Ward, 179 F.3d 904, 917 (10th Cir. 1999) (concluding that where the evidence does not support the giving of a lesser-included offense instruction, defense counsel is not ineffective for failing to request one). Davis cites no authority showing that such a request would have been granted if one had been made or that his counsel had a basis for requesting a jury instruction after the jury had already started its deliberations. Counsel is not required to make futile arguments or meritless motions. See Koch v. Puckett, 907 F.2d 524, 527 (5th Cir. 1990). Absent a showing that defense counsel had, but failed to make, a valid request for a lesser-included offense instruction after the jury sent out its note, Davis does not show that his counsel was deficient or that the state court's ultimate conclusion was unreasonable and, therefore, he is not entitled to relief on this issue.

### 3.   Trial Counsel's Conflict of Interest

Davis alleges that his defense counsel had a conflict of interest that resulted in prejudice when counsel admitted during

his trial that Davis pointed a weapon at the victim.[72]   The state
habeas court rejected this claim because the record did not support
Davis's characterization of his counsel's comments.[73]   The record
reflects that the comment attributed to Davis's defense counsel was
made during the punishment phase of proceeding, where Davis elected
to have his sentence determined by the trial court.[74]   During his
argument to the trial court regarding potential punishment, defense
counsel made the following remark:

> [W]hen we look at the facts of this case, an
> aggravated robbery obviously is an egregious offense.
> It's a first-degree felony.   I think the level of
> violence here is certainly not there.   Shots were not
> fired.   Clearly at least the jury believed that after
> three and a half hours of deliberation, in fact,
> Mr. Davis did point the weapon at Mr. Perez.   So,
> certainly at least in the jury's mind, the State met its
> burden of proof.[75]

Because Davis's claim was contradicted by the record, the state
habeas corpus court found that he failed to show that his trial
counsel had a conflict of interest.[76]

To establish a constitutional violation of the Sixth Amendment
on the basis of a conflict of interest the defendant "must
demonstrate that an actual conflict of interest adversely affected

---

[72]Amended Petition, Docket Entry No. 9, p. 11.

[73]Findings and Conclusions, Docket Entry No. 14-20, p. 141
¶¶ 20-21.

[74]Court Reporter's Record—Trial on Punishment, Vol. 5, Docket
Entry No. 14-7, p. 11.

[75]Id. (emphasis added).

[76]Findings and Conclusions, Docket Entry No. 14-20, p. 141 ¶ 21.

his lawyer's performance." <u>Cuyler v. Sullivan,</u> 100 S. Ct. 1708, 1718 (1980). "An 'actual conflict' exists when defense counsel is compelled to compromise his or her duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a former or current client." <u>Perillo v. Johnson,</u> 205 F.3d 775, 781 (5th Cir. 2000).

Davis makes only conclusory allegations that his trial counsel acted against his interests or provided ineffective assistance, and there is no support in the record for his claim that counsel had an actual conflict. His bare allegations are insufficient to establish an actual conflict of interest or to state a valid claim. <u>See Koch,</u> 907 F.2d at 530 (holding that the petitioner's conclusory allegations were insufficient to establish "a valid conflict of interest claim"); <u>see also Davis v. Thaler,</u> 373 F. App'x 446, 449 (5th Cir. April 12, 2010) (per curiam) (unpublished) ("A conclusory allegation of an actual conflict is insufficient for obtaining habeas corpus relief."). Because Davis does not demonstrate that his trial counsel labored under an actual conflict that prejudiced his defense, he fails to establish that the state court's decision was contrary to or an unreasonable application of Supreme Court precedent; and he is not entitled to relief on this claim.

## C.    Ineffective Assistance of Appellate Counsel

Davis contends that he is entitled to relief because his appellate counsel failed to raise two issues during his direct

appeal.[77] Specifically, Davis claims that his appellate counsel was deficient for failing to argue that (1) there was insufficient proof that he possessed a deadly weapon because the firearm was not entered into evidence; and (2) he was improperly denied a lesser-included offense instruction on theft after the jury sent out its note during deliberations.[78]

To establish that counsel's performance was deficient in the context of an appeal, the petitioner must show that his attorney was objectively unreasonable "in failing to find arguable issues to appeal — that is, that counsel unreasonably failed to discover non-frivolous issues and to file a merits brief raising them." Smith v. Robbins, 120 S. Ct. 746, 764 (2000). If the petitioner succeeds in such a showing, he must then establish actual prejudice by demonstrating a "reasonable probability" that, but for his counsel's deficient performance, "he would have prevailed on his appeal." Id.

The state habeas corpus court rejected Davis's claim after finding that he failed to show that his counsel was deficient for failing to present the proposed issues or that he would have prevailed if they had been raised.[79] The state habeas corpus court found that appellate counsel reviewed the appellate record and

---

[77]Amended Petition, Docket Entry No. 9, pp. 6, 10.

[78]Id.

[79]Findings and Conclusions, Docket Entry No. 14-20, p. 142 ¶¶ 28-32.

-27-

considered whether to raise numerous grounds on appeal, including the applicant's entitlement to a lesser-included jury instruction and sufficiency of the evidence.[80] The state habeas corpus court noted further that the court of appeals independently reviewed the entire record and concluded that there was no reversible error and no arguable grounds for review.[81] As a result, the state habeas corpus court concluded that Davis failed to show that his appellate counsel was ineffective.[82]

The record confirms that Davis's appellate counsel filed a detailed brief under Anders, certifying that the appeal was frivolous because there were no arguable grounds for appeal.[83] In making that assertion, appellate counsel summarized the evidence at length and considered whether it was sufficient to support the conviction.[84] Acknowledging that the firearm was not admitted into evidence, appellate counsel noted that a photograph of the firearm that was recovered by Officer Vallejo was admitted based on Vallejo's testimony about the circumstances surrounding the weapon's recovery and the photograph captured by his body camera.[85]

---

[80]Id. ¶ 33.

[81]Id. ¶ 34.

[82]Id. at 144 ¶ 7.

[83]Anders Brief in Support of Motion to Withdraw, Docket Entry No. 14-11, p. 16.

[84]Id. at 16-20, 31-38.

[85]Id. at 38.

Appellate counsel concluded that the evidence was sufficient to support Davis's conviction for aggravated robbery with a deadly weapon either as a principal actor or a party.[86]

Appellate counsel also considered the jury instructions, noting that defense counsel requested a lesser-included instruction on the offense of theft from a person.[87] Because the evidence was uncontroverted that a firearm was used or exhibited during the commission of the offense, counsel acknowledged that the trial court did not err in denying the requested instruction.[88]

As noted above, Davis filed a pro se response to the Anders Brief, arguing that the evidence was insufficient to prove all elements of the charged offense beyond a reasonable doubt because the State did not establish that he possessed a firearm during the offense.[89] The intermediate court of appeals rejected that argument and affirmed the conviction based on an independent review of the record, which failed to disclose any reversible error. See Davis v. State, No. 01-18-00858-CR, 2019 WL 6905226, at *1 (Tex. App. — Houston [1st Dist.] Dec. 19, 2019) (per curiam).[90] Davis has not shown that the evidence was insufficient to support his conviction for aggravated robbery while using or exhibiting a firearm.

---

[86]Id.

[87]Id. at 43.

[88]Id. at 46-48.

[89]Response to Anders Brief, Docket Entry No. 14-12, pp. 6-10.

[90]Memorandum Opinion, Docket Entry No. 14-13, p. 3.

Likewise, he has not shown that he was entitled to a jury instruction on the lesser-included offense of theft. Because Davis has not established that he would have prevailed on his appeal if his counsel had raised these issues in a merits brief, he does not establish that his appellate counsel was ineffective or that the state habeas corpus court's conclusion was unreasonable. Therefore, Davis is not entitled to relief on this claim.

## D. Prosecutorial Misconduct

Finally, Davis contends that the State engaged in prosecutorial misconduct by admitting a photograph of the firearm depicted in State's Exhibit 20 for the purpose of denying him a lesser-included offense instruction.[91]   The state habeas corpus court rejected this claim, noting that Officer Vallejo testified to the foundational elements for admitting the photograph in State's Exhibit 20, and that Davis failed to show that the State committed prosecutorial misconduct by presenting this evidence.[92]

Davis has not shown that State's Exhibit 20 was inadmissible for reasons discussed above.   He does not otherwise demonstrate

---

[91]Amended Petition, Docket Entry No. 9, p. 10.

[92]Findings and Conclusions, Docket Entry No. 14-20, p. 143 ¶¶ 37-38.   The state habeas corpus court also found that the claim was "procedurally barred" because Davis failed to raise this argument on direct appeal.  See id. ¶¶ 39-40.  Because the claim was rejected for lack of merit, the court does not address the respondent's argument that the claim is procedurally barred from federal habeas review.  See Respondent's MSJ, Docket Entry No. 13, pp. 35-37.

that the state court's findings and conclusions on this issue are erroneous or that State's Exhibit 20 was introduced for an improper purpose that could be construed as prosecutorial misconduct.  See, e.g., Darden v. Wainwright, 106 S. Ct. 2464, 2471 (1986) (holding in connection with a prosecutorial-misconduct claim that "[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'") (citing Donnelly v. DeChristoforo, 94 S. Ct. 1868 (1974)).  Because Davis does not show that the state habeas corpus court unreasonably denied this claim, he is not entitled to relief.  Absent a showing that any of Davis's claims have merit, Respondent's MSJ will be granted and this action will be dismissed.

## IV.  Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner.  A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that 'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'"  Tennard v. Dretke, 124 S. Ct. 2562, 2565 (2004) (quoting Slack v. McDaniel, 120 S. Ct. 1595, 1604 (2000)).  Under the controlling standard this requires a petitioner to show that

"jurists of reason could disagree with the [reviewing] court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Buck, 137 S. Ct. at 773 (internal quotation marks and citation omitted).

After careful review of the pleadings and the applicable law, the court concludes that reasonable jurists would not find the assessment of the constitutional claims debatable or wrong. Because the petitioner does not demonstrate that his claims could be resolved in a different manner, a certificate of appealability will not issue in this case.

### V.   Conclusion and Order

The court **ORDERS** as follows:

1.   Respondent's Motion for Summary Judgment (Docket Entry No. 13) is **GRANTED**.

2.   The [Amended] Petition for a Writ of Habeas Corpus By a Person in State Custody filed by Thurston Rickey-Lee Davis (Docket Entry No. 9) is **DENIED**, and this action will be dismissed with prejudice.

3.   A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this the 21st day of July, 2022.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

-32-